IN THE UNITED STATES FEDERAL DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARQUITA CARATTINI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CIV-09-489-D |
| ) | |
| KEN SALAZAR, Secretary, ) | |
| United States Department of Interior, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM DECISION**

This action pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, seeks judicial review of a final determination of the United States Department of Interior ("DOI") that two of the plaintiffs, Marquita Carattini and Richard Banderas, vacated their positions on the business committee of the Apache Tribe of Oklahoma and were validly replaced through a special election. The matter comes before the Court for decision on the administrative record submitted by DOI and the parties' briefs.[1] Upon consideration of the record, the parties' arguments, and the governing law, the Court issues its decision.

### Standard of Review

Under the APA, federal courts "cannot set aside an agency decision unless it fails to meet statutory, procedural or constitutional requirements, or unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Sac and Fox Nation of Missouri v. Norton*,

---

[1] The Court has previously ruled on a jurisdictional challenge raised by Defendants in their brief. *See* Order 4/9/10 [Doc. No. 36]. Also, the Court has previously dismissed Plaintiff Ronald Ahtone as a party. *See* Order 4/28/10 [Doc. No. 37]. As used in this Order, the term "Plaintiffs" refers solely to the remaining parties, Marquita Carattini and Richard Banderas.

240 F.3d 1250, 1260 (10th Cir. 2001). The Supreme Court has explained the arbitrary and capricious standard of § 706(2)(A) as follows:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies: We may not supply a reasoned basis for the agency's action that the agency itself has not given. We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations and citations omitted); *see State of New Mexico v. Bureau of Land Management*, 565 F.3d 683, 704 (10th Cir. 2009); *see also Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074, 1078 (10th Cir. 2004).

"'[T]he 'arbitrary and capricious' standard requires an agency's action to be supported by the facts in the record.'" *Pennaco Energy, Inc. v. United States Dep't of the Interior*, 377 F.3d 1147, 1156 (10th Cir.2004) (quoting *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994)). "Thus, agency action, whether it is classified as 'formal' or 'informal' . . . [must be] supported by 'substantial evidence' in the administrative record." *Id.*

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. This is something more than a mere scintilla but something less than the weight of the evidence. Evidence is generally substantial under the APA if it is enough to justify, if the trial were to a jury, refusal to direct a verdict on a factual conclusion.

*Id*. (internal quotations and footnote omitted); *see also Via Christi Regional Medical Center, Inc. v. Leavitt*, 509 F.3d 1259, 1271 (10th Cir. 2007).

**Factual and Procedural Background**

The Apache Tribe of Oklahoma (the "Tribe") is governed by a tribal council that consists of all tribal members who are 18 years of age or older. The power to transact business and speak for the Tribe is delegated to an elected business committee, commonly known as the Apache Business Committee (the "Committee" or "ABC"). The Committee consists of three officers – chairman, vice-chairman, and secretary-treasurer – and two additional members. The Tribe's constitution provides, in part, as follows concerning their qualifications: "Any person holding elective office who without an excuse from the business committee misses three regular or special meetings in succession shall automatically lose office." *See* Constitution of Apache Tribe of Okla. Feb. 5, 1972 as amended, art. XIII (hereafter, the "Constitution"); *see also* Administrative Record ("AR"), Doc. 1.

On May 10, 2008, the Tribe elected the following persons: Alonzo Chalepah, chairman; Mary Rivera, vice-chairman; Plaintiff Marquita Carattini, secretary-treasurer; and Plaintiff Richard Banderas and Ronald Ahtone, ABC members. In June, 2008, Chairman Chalepah purported to remove Mr. Ahtone from office and to appoint a replacement.[2] During July and August, 2008, Chairman Chalepah called a series of special meetings, which Plaintiffs did not attend. In its decision, DOI determined that Chairman Chalepah notified Plaintiffs of the special meetings and the notice "was sufficient to satisfy due-process requirements, and/or was sufficient to provide notice-in-fact to [Plaintiffs] such that neither can claim to have missed any meetings due to lack of

---

[2] In the decision under review, DOI determined that Mr. Ahtone's removal and this appointment were improper, and refused to recognize his replacement.

knowledge as to the time and place they were to be held." *See* Compl., Ex. A [Doc. 1-1] at 5; *see also* AR, Doc. 144 (hereafter, the "Decision"). DOI further determined that Plaintiffs "knowingly and purposefully boycotted the special meetings" and automatically lost their offices pursuant to Article XIII of the Constitution. *See id.*

The Apache Election Board held a special election in October, 2008, to fill Plaintiffs' vacant positions. Chairman Chalepah provided certified results of the election to the Bureau of Indian Affairs ("BIA") in November, 2008. Beverly Mattice was elected secretary-treasurer, and Henry Kostzuta was elected ABC member. In the Decision, DOI determined that the special election "was [not] conducted in a manner that directly violated the plain language of the Tribe's Constitution" and the Constitution does not "provide for oversight of tribal elections by the BIA." *See id.* at 5-6. DOI therefore accepted the results of the special election and recognized the ABC constituted as follows: Chairman Chalepah; Vice-Chairman Rivera; Secretary-Treasurer Mattice; and Members Ahtone and Kostzuta. DOI issued its final decision on January 29, 2009.

**Plaintiffs' Contentions**

Plaintiffs first contend DOI's decision regarding their removal from office was arbitrary and capricious for the following reasons: (A) the finding that Plaintiffs received sufficient notice of the meetings lacks factual support in the administrative record; (B) the finding that Plaintiffs were absent from three consecutive meetings is inconsistent with the Constitution because no valid meeting could be held without a quorum, Plaintiffs excused themselves from attending the meetings, and Chairman Chalepah could not validly call a meeting without giving notice to Mr. Ahtone, who remained a member; and (C) the finding that Plaintiffs boycotted the meetings lacks factual support in the administrative record. Second, Plaintiffs contend DOI's decision concerning their replacement was arbitrary and capricious because the special election conducted to fill their

4

positions was invalid under the Constitution. Finally, Plaintiffs contend DOI's Decision was procedurally flawed because they were not consulted or given an opportunity to address all issues before the Decision was made.

## Discussion

Before addressing the merits of Plaintiffs' arguments, the Court notes the legal context of DOI's Decision. "[T]he Supreme Court has uniformly recognized that one of the fundamental aspects of tribal existence is the right to self-government." *See Wheeler v. United States Dep't of Interior*, 811 F.2d 549, 551 (10th Cir. 1987); *see also White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980). While federal administrative decisions must comport with the policy of respecting tribal sovereignty and self-determination, DOI has "both the authority and responsibility to interpret tribal law when necessary to carry out the government-to-government relationship with the tribe." *See Ransom v. Babbitt*, 69 F. Supp. 2d 141, 150 (D.D.C. 1999) (internal quotation omitted). DOI "also retains the ability to review tribal political procedures when it is forced to recognize a person or an entity as a tribe's legitimate representative in relations with the United States." *Id*. at 151; *see also Goodface v. Grassrope*, 708 F.2d 335, 338-39 (8th Cir. 1983). "Although case law limits the extent to which [DOI] may decide internal tribal issues, it is clear that [DOI] must, at a minimum, determine whether or not tribal interpretations of their own laws are reasonable." *Id*. at 152.

## I. Plaintiffs' Removal from Office

### A. Sufficiency of Plaintiffs' Notice of Meetings

In the Decision, DOI found that "Chairman Chalepah notified [Plaintiffs] of special meetings to be held on July 8, 10, 30, and 31, and August 1, of 2008." *See* Decision at 5. Plaintiffs contend this finding is unsupported by the factual record, which contained a written "Official Meeting

5

Notice" only for meetings on July 8 and July 10 (and one on July 14 not listed in the Decision). Plaintiffs note that the minutes of the remaining meetings on July 30, July 31, and August 1 do not acknowledge Plaintiffs as ABC members, thereby suggesting they were not treated as members entitled to notice for those meetings.

Although Plaintiffs accurately describe certain documents contained in the administrative record, they fail to credit other documents unfavorable to their position. Vice-Chairman Rivera submitted an affidavit stating that she "personally gave [Plaintiffs] notice of all meetings by phone, in writing, and at times, in person." *See* Compl. Ex. B [Doc. 1-2] at 14, ¶ 7; *see also* AR Doc. 113. Plaintiffs attack the credibility of this statement and argue that neither DOI nor this Court should give it any credence. They also ignore Chairman Chalepah's affidavit, which similarly stated: "Ms. Marquita Carratini [sic] and Mr. Richard Banderas were given notice of seven Apache Business Committee meetings which took place between June 21, 2008 and August 1, 2008." *See* Compl., Ex. B [Doc. 1-2] at 11, ¶ 7; *see also* AR, Doc. 114. Plaintiffs' arguments thus disregard the standard of judicial review, which prevents the Court from substituting its judgment for that of the agency.

Further, an examination of the administrative record reveals that Plaintiffs did not oppose their purported removal from office based on any defect in or lack of notice of the special meetings called by Chairman Chalepah. Rather, Plaintiffs' stated position was that no valid meetings could be held without a quorum of elected members. *See* AR, Doc. 127 (Attorney's Letter of Nov. 20, 2008, on behalf of ABC Majority), at pages 9-10; *see also* AR, Doc. 112 (Letter of Nov. 3, 2008, from Carratini, Ahtone and Bandares as quorum of ABC). This position, further discussed below, is the crux of the dispute. In short, the Court finds no basis to disturb DOI's finding that Plaintiffs had sufficient notice of the special meetings to require their attendance.

B.     **Plaintiffs' Absence from Meetings**

Plaintiffs challenge as inconsistent with the Tribe's Constitution, DOI's finding that they missed three consecutive ABC meetings. They argue that (1) a "meeting" requires a quorum of elected members, (2) a quorum of the Committee could, and did, excuse their own absences, and (3) Chairman Chalepah could not "call" a meeting without giving notice to all elected members, including Mr. Ahtone.[3] Plaintiffs contend that DOI unreasonably, and thus arbitrarily, interpreted the Constitution as counting an ABC "meeting" to include any meeting called by the chairman – even if no quorum was present and even if all elected members were not notified – and as prohibiting a quorum of ABC members to excuse themselves from attending a noticed meeting. Plaintiffs state the record is clear that they deliberately excused themselves from any meeting where Mr. Ahtone was not recognized as an ABC member, and "this excused absence was made known, communicated forcibly and had to have been understood by the Chairman and Vice-Chairman." *See* Pls.' Br. Supp. Mot. Summ. J. [Doc. 21] at 23.

1.     **Required Attendance**

Article XIII of the Constitution states unambiguously that a person holding elective office automatically forfeits the office if he or she "without excuse from the business committee misses three regular or special meetings in succession." The Constitution mandates regular ABC meetings "once every month on the 3rd Saturday unless a quorum of the business committee shall decide to meet on another day of the month." *See* Constitution, art. VI, § 3. It also authorizes special ABC

---

[3] Plaintiffs also challenge as factually unsupported the finding that they were absent from the July 8 meeting. Plaintiffs note that the meeting minutes show they were initially present but left after Chairman Chalepah refused to allow Mr. Ahtone to be seated as an ABC member. Because Plaintiffs clearly missed more than three consecutive meetings, however, this challenge provides an insufficient basis to disturb the Decision.

7

meetings as follows: "Special meetings of the business committee may be called by the chairman at his discretion and shall be called by the chairman at the written request of three (3) members of the business committee." *Id*. § 4. The Constitution does not specify a procedure for the chairman to call a special meeting of the Committee, although it states requirements for calling a special meeting of the tribal council (10-days notice and a statement of the principal object of the meeting). It does provide a place for the meetings: "All regular and special meetings of the . . . Apache Business Committee shall be held at the Anadarko Agency Conference Room unless some other point, under the Anadarko Agency jurisdiction, is designated in the notice of call." *Id*. art. XIV.

Plaintiffs' argument concerning the invalidity of the special meetings called by Chairman Chalepah is based on a constitutional provision establishing a quorum to conduct business: "Three (3) members of the business committee shall constitute a quorum to transact business at any meeting." *See id.* art. XV, § 2. DOI rejected Plaintiffs' position that a special meeting called by the chairman was only a "meeting" requiring attendance if a quorum was present. DOI reasoned that Plaintiffs' reading of the Constitution incorrectly grafted the quorum provision onto the special meeting provision: "The plain language of the Constitution permits the Chairman to call a meeting. The fact that no business can be conducted at such a meeting does not turn the meeting into a non-meeting." *See* Decision at 5.

Plaintiffs' contention that DOI's reading of the Constitution is unreasonable or wrong, is unsupported by any citation of legal authority. Plaintiffs do not claim that any tribal decision or prior interpretation of the Constitution supports their view. Moreover, accepting their interpretation would enable a majority of the Committee to prevent any meeting from ever occurring by simply refusing to attend, as Plaintiffs attempted to accomplish here. Absent any authority for such a result, the Court finds that Plaintiffs have failed to establish that DOI made a clear error in judgment.

### 2. Excused Attendance

Plaintiffs alternatively argue that they and Mr. Ahtone represented a quorum of the Committee and effectively excused Plaintiffs' absences from the missed special meetings called by Chairman Chalepah. In making this argument, Plaintiffs ignore the fact that the Constitution provides that three ABC members "constitute a quorum to transact business <u>at any meeting</u>." *See* Constitution, art. XV, § 2 (emphasis added). Plaintiffs point to no meeting at which the Committee, acting through a quorum in attendance, excused Plaintiffs' absences. Further, Plaintiffs provide no authority for their position that they could simply choose not to participate in ABC meetings with impunity by declaring themselves excused. As explained above, absent any legal authority, the Court finds that Plaintiffs have failed to establish DOI reached an arbitrary and capricious conclusion that their absences were unexcused.

### 3. Meetings Without Member Ahtone

Plaintiffs also contend that Chairman Chalepah's call of a special meeting without notice to Mr. Ahtone (whom he considered to be disqualified and removed from office) was invalid and rendered the meetings a nullity. Plaintiffs rely for this position on federal case law holding that DOI could properly refuse to recognize actions taken at a tribal council meeting that was held in violation of a provision of the tribal constitution requiring notice. *See Seminole Nation of Okla. v. Norton*, 223 F. Supp. 2d 122, 139 (D.D.C. 2002) (discussing *Milam v. United States Dep't of Interior*, 10 I.L.R. 3013, 3015 (D.D.C. Dec. 23, 1982)).

The Court finds the cited case authority to be inapposite. The unremarkable conclusion reached in *Milam* was that action taken in violation of a clear provision of the tribe's constitution need not by recognized by DOI. As previously noted, the Constitution in this case does not specify the notice required to call a special meeting of the Committee. Further, the Court has previously

upheld DOI's finding that sufficient notice of the regular meetings was given. Accordingly, the Court finds that DOI did not render an arbitrary and capricious decision by declining to disregard ABC meetings called by Chairman Chalepah without proof of notice to the purportedly-removed member, Mr. Ahtone.

### C. Plaintiffs' "Boycott" of Meetings

Plaintiffs challenge DOI's finding that they "knowing and purposefully boycotted the special meetings" as unsupported by the factual record. *See* Decision at 5. Plaintiffs argue that, far from a "boycott," they consistently took the position that their attendance was unnecessary because they were excused. In other words, Plaintiffs disagree only with DOI's characterization of their actions as constituting a boycott, but do not disagree that their absences from the meetings were purposeful and deliberate. Plaintiffs correctly state that the reason why an elected official misses a meeting is irrelevant, except to the extent the absence is excused. For reasons addressed above, the Court finds no basis to disturb the DOI's conclusion that Plaintiffs deliberately missed more than three consecutive ABC meetings and had not shown their absences to be excused.

For these reasons, the Court finds that Plaintiffs have not established that DOI acted arbitrarily and capriciously in concluding they were automatically removed from office by their failure to attend ABC meetings.

## II. Election of Plaintiffs' Replacements

Plaintiffs also assert that the special election conducted to fill their ABC positions was "contrary to the Apache Constitution and laws." *See* Pls.' Br. Supp. Mot. Summ. J. [Doc. 21] at 26. Noticeably absent from Plaintiffs' argument in support of this assertion is any citation to a provision of the Constitution or other tribal law, such as the Tribe's election ordinance, that was allegedly violated. Instead, Plaintiffs argue simply that ABC lacked a quorum to call a special election and

10

"[t]here is no provision of the Apache Constitution or the Apache Election Regulations [AR Doc. 4] for a special election unless the ABC calls for one." *See id.*[4]

Contrary to this argument, the Court has searched the Constitution and election regulations and found no requirement that ABC must initiate a special election. The Constitution does not provide for special elections, except to state: "Vacancies in any elective office, except that of the chairman, shall be filled for the unexpired term at a special election to be held according to Article VII within sixty (60) days of the vacancy . . . ." *See* Constitution, art. VIII. Article VII requires secret ballots and a provision for absentee voting but, concerning the procedures for elections, provides only that "[a]ll elections shall be conducted according to an ordinance duly adopted by the business committee." *See id.*, art. VII, § 3. The administrative record contains election regulations adopted by the Committee in February, 2008. *See* AR, Doc. 4. These regulations provide for elections, including special elections, to be conducted by an election board. The Court finds no provision in the regulations regarding special elections that would require the Committee to call a special election. *See id.* art. XV.

For these reasons, the Court finds that Plaintiffs have failed to establish any error in the DOI's finding that the special election held to fill their positions did not directly violate the plain language of the Tribe's Constitution.

## III. Procedural Irregularity

Finally, Plaintiffs contend the Decision is procedurally flawed because they requested a consultation with DOI before the issuance of a decision, which request was ignored or denied.

---

[4] Plaintiffs also cite *Tarbell v. Department of Interior*, 307 F. Supp. 2d 409 (N.D.N.Y. 2004), which discussed DOI's responsibility to interpret tribal laws and procedures in a reasonable manner when carrying out its duty to recognize a tribal government. *Id.* at 423-24 (quoting *Ransom*, 69 F. Supp. 2d at 153). However, Plaintiffs do not explain how this principle was violated here.

Plaintiffs assert they were entitled under Executive Order 13175 to receive such a consultation. Plaintiffs do not identify any particular provision of the order that allegedly establishes this entitlement. Plaintiffs argue that, as a result of the lack of consultation, they were denied an adequate opportunity to address all issues addressed by DOI in the Decision.

The stated purpose of Executive Order 13175 is "to establish regular and meaningful consultation and collaboration with tribal officials in the development of Federal policies that have tribal implications, to strengthen the United States government-to-government relationships with Indian tribes, and to reduce the imposition of unfunded mandates upon Indian tribes." *See* Exec. Order No. 13175, 65 Fed. Reg. 67,249 (Nov. 6, 2000). To accomplish this goal, the order requires certain federal agencies to "have an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications." *Id*. § 5(a). It imposes a duty of consultation "[t]o the extent practicable and permitted by law" by prohibiting an agency from promulgating "any regulation that has tribal implications" and that either "imposes substantial direct compliance costs on tribal governments" or "preempts tribal law" without first "consult[ing] with tribal officials early in the process of developing the proposed regulation." *Id*. § 5(b)-(c). It also requires agencies to "consult with tribal officials as to the need for Federal standards and any alternatives" when "determining whether to establish Federal standards." *Id*. § 3(b)(3).

Plaintiffs do not explain how Executive Order 13175 was implicated under the circumstances of this case, in which no federal regulation, standard, or policy was under consideration. They also provide no authority for the proposition that a violation of the order would entitle them to relief. The Court notes the order contains an express provision regarding judicial review: "This order is intended only to improve internal management of the executive branch, and is not intended to create

any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person." *Id*. § 10. Further, the administrative record shows that Plaintiffs provided DOI with numerous statements of their position, written responses, and supporting documents, and they received a full opportunity to be heard during the administrative process. The Court finds no violation by DOI of any duty of consultation or any other procedural requirements.[5]

Therefore, the Court finds no procedural defect that would justify a reversal of the Decision under review.

## Conclusion

For the reasons set forth above, the Court finds that DOI's Decision should be affirmed. Judgment will be entered accordingly.

IT IS SO ORDERED this 3rd day of November, 2010.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiffs again cite a discussion in *Tarbell* of the administrative process required by prior judicial decisions in *Ransom*. A decision of DOI regarding tribal governance was reversed in *Tarbell* because the agency mistakenly viewed the prior decisions as mandating a particular result and so failed to engage in a "meaningful analysis." *See Tarbell*, 307 F. Supp. 2d at 429.

13